CHARLES R. BROWN and ESTELLE BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 5465-71.
United States Tax Court
T.C. Memo 1973-157; 1973 Tax Ct. Memo LEXIS 128; 32 T.C.M. (CCH) 774; T.C.M. (RIA) 73157; July 23, 1973, Filed *128 James E. Miller, for the petitioners. Donald W. Williamson, Jr., for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1968 and 1969 in the amounts of $499.20 and $785.22, respectively. Petitioners claim an overpayment of their Federal income tax for 1969 in the amount of $7,924.00. Since petitioners have conceded the self-employment tax issue, the only issue for disposition by this Court is 2 whether the long-term capital gain from the sale in 1969 of a specified portion of petitioner Charles R. Brown's stock in Brown Auto Stabilizer Company (hereinafter referred to as either "Stabilizer" or "the corporation") was properly taxable in 1969 to petitioners instead of to the corporation. FINDINGS OF FACT Some of the facts are stipulated; the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Charles R. Brown and Estelle Brown were husband and wife during the years in issue and resided in Orlando, Florida, at the time of the filing of the petition herein. They filed joint Federal income *129 tax returns for the calendar years 1968 and 1969 and an amended joint Federal income tax return for 1969 with the district director of internal revenue, Jacksonville, Florida. Since Estelle Brown is a party to this proceeding solely by reason of having filed joint returns with Charles R. Brown, the latter will hereinafter be referred to as petitioner. Petitioner was president of Stabilizer and owner of 70 percent of the outstanding stock during the years in issue. The remaining 30 percent of stabilizer's outstanding stock was owned by other individuals. Stabilizer was organized under the laws of the State of Florida for the purpose of developing and marketing an "auto stabilizer" that purportedly minimized skidding by automobiles. Stabilizer's address and principal place of business is in Orlando. 3 On Schedule D, "Sales or Exchanges of Property," filed with his original 1969 Federal income tax return, petitioner reported long-term capital gain from the sale of the corporation's stock as detailed below: Sale price
$54,000
Less: Cost or other basis
15,500
Long-term capital gain
$38,500
One-half taxable
$19,250
The parties have stipulated that *130 in the event it is determined by the Court that (1) petitioner was taxable on the sale of the stock in 1969, the correct amount of sales price was $52,000; (2) petitioner's basis in the stock was $12,500; (3) the long-term capital gain was $39,500; and (4) the correct amount of taxable gain was $19,750. Petitioner claimed a tax refund for 1969 in the amount of $7,924 in his 1969 amended Federal income Tax return. Petitioner justified his entitlement to a refund as follows: Taxpayer reported gain on sale of stock when in fact the stock sold was for the benefit of the corporation and the sale was to have been made by the corporation. Taxpayer has refunded all of the sales price back to the corporation. This was reported in error on the taxpayers 1969 Federal Income Tax (Form 1040). The stock that was sold by petitioner consisted of 22,000 shares in Stabilizer. Petitioner had purchased 4 18,000 of such shares in June 1968 and had received 4,000 shares in an exchange for shares of stock in C. R. Brown Corporation upon the occasion of the merger of that corporation with Stabilizer in September 1968. Petitioner had acquired the C. R. Brown Corporation stock in December 1967. *131 The 22,000 shares of Stabilizer stock were sold by petitioner to various individuals during the period from March through June of 1969. Petitioner had never assigned or transferred these 22,000 shares of Stabilizer stock to the corporation and petitioner was not acting as trustee for the corporation as to the receipt of any funds from the sale of this stock. There is no evidence that Stabilizer reported the sale of this stock on any of its Federal income tax returns. There were no corporate minutes or other documentation authorizing or verifying petitioner's sale of this stock to the corporation. Tom Fuller was the only other officer or member of the corporation's board of directors who possessed any knowledge as to the occurrence of the involved stock sale transactions. Petitioner did not actively solicit purchasers for the stock; rather, the purchasers inquired of him as to whether the stock was for sale. Moreover, the purchasers of the stock were under the impression that they were acquiring the stock from petitioner and not from the corporation. 5 Upon the sale of the stock, petitioner had complete dominion and control over the sale proceeds and could have *132 done whatever he wished with those proceeds. There was absolutely no requirement or obligation on petitioner's part to pay the proceeds over to the corporation. Petitioner purchased certificates of deposit in his own name with the proceeds from the stock sales and reported interest income from such certificates on his 1969 original Federal income tax return. Because the corporation was in need of operating capital, petitioner intermittently loaned part of the sale proceeds to the corporation, in evidence of which he took promissory notes from the corporation on the following dates and in the following amounts: Date
Amount April 25, 1969
$10,000.00
Nov. 21, 1969
10,000.00
Dec. 31, 1969
5,000.00
March 26, 1970
5,156.06
$30,156.06
These loans were carried on the corporate books in an account designed as notes payable to petitioner. Petitioner did not loan the entire proceeds to the corporation at one time due to his fear that the creditors of the corporation might attempt seizure of the proceeds and the corporation would be forced to discontinue operations. 6 Petitioner's original 1969 Federal income tax return, in which the stock sale transactions *133 had been reported as resulting in gain to petitioner, was prepared by William Cagle ("Cagle"). Cagle was the corporation's bookkeeper and had been petitioner's personal bookkeeper for 16 years and during the years involved herein. The information utilized by Cagle in preparing petitioner's original 1969 return was obtained from petitioner and the stock sale transactions were reflected according to Cagle's understanding thereof. Cagle was also a minority stockholder in the corporation. Petitioner did not pay the tax liability reflected in his original 1969 return in the amount of $12,746.26 because he did not have the funds with which to do so. Realizing that he did not have the funds to pay his 1969 Federal income tax liability, petitioner subsequently contacted a certified public accountant, Robert E. Ralston ("Ralston"). Ralston was unfamiliar with the stock sale transactions, but pursuant to his conversation with petitioner, Ralston recommended that the amended 1969 return be filed and that certain entries be made on the books of the corporation for the purpose of reversing the loan transactions as reflected on those books. 7 Accordingly, based on Ralston's instructions, *134 Cagle on June 30, 1970, closed the corporate account reflecting notes payable to petitioner in the total amount of $30,156.06 by transferring its balance to an account described as "C. R. Brown-Long Term Debt." At that time the corporation's notes to petitioner were cancelled and 22,000 shares of its capital stock were issued to him.
The following entry was recorded in the corporation's books as of June 30, 1970: Account and Explanation
Debit
Credit C. R. Brown, Long-Term Debt
$54,000.00
Capital stock
$33,000.00
Paid-in surplus
21,000.00
To issue 22,000 shares of stock to C. R. Brown for 22,000 shares borrowed from Brown by the company for sale to various individuals in late 1968 and 1969, proceeds of which have been remitted to the company.
As a result of the debit of $54,000 and the credit of $30,156.06 to the account "C.R. Brown, Long-Term Debt," there was a balance shown as being due the corporation from petitioner in the amount of $23,843.94, (i.e., $54,000.00, the sale price of the stock, less $30,156.06, the amount previously loaned the corporation by petitioner). Stabilizer did not have sufficient authorized stock to issue an additional *135 22,000 shares of its stock during 8 1969. Moreover, Stabilizer did not amend its charter during 1969 to increase its authorized stock, a step which would have been required by Florida state law if Stabilizer were to validly issue additional stock in 1969. Respondent, in his statutory notice of deficiency, determined that the long-term capital gain realized on the stock sales in 1969 was taxable to petitioner and accordingly increased petitioner's Federal income tax liability for 1969 to reflect inclusion of this income item. OPINION The only issue for consideration is whether the long-term capital gain resulting from petitioner's sale of Stabilizer stock in 1969 was properly taxable to petitioner instead of to Stabilizer. Respondent contends that the capital gain was properly taxable to petitioner in 1969. Respondent supports this contention by reference to the fact that (1) petitioner owned the stock sold; (2) petitioner negotiated the sale of the stock; (3) the purchasers of the stock believed they were buying the stock from petitioner and not from Stabilizer; (4) petitioner had full dominion and control over the proceeds received from the stock sale and was under *136 no obligation whatsoever to convey these funds to Stabilizer; and (5) there was no corporate action in 1969 that would have 9 authorized Stabilizer to "borrow" a portion of the Stabilizer stock owned by petitioner for the purpose of enabling Stabilizer to sell this stock to raise operating capital. We agree with respondent. In , the Supreme Court stated that "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." The instant facts clearly reflect that petitioner had "unfettered command" over the proceeds received from the disposition of the 22,000 shares of Stabilizer stock. Petitioner enjoyed absolute control over the proceeds received from the stock sale. The fact that he did ultimately give these proceeds to Stabilizer was a volitional, and not an obligatory, action on petitioner's part. Tax liabilities are determined in the light of what in fact was done. See ; ; and . *137 Petitioner not only owned the stock that was sold but he gave every indication to the purchasers of this stock that he was acting as principal in the transactions and not as an agent. Moreover, there is nothing in Stabilizer's corporate records 10 for 1969 to reflect either that petitioner was authorized to transfer or assign the subject stock to Stabilizer, or that petitioner was authorized to act as agent for Stabilizer in disposing of the subject stock. We are convinced that petitioner acted on his own behalf in the 1969 stock transactions. Accordingly, we have concluded that the subsequent attempt to shift the tax consequences of these stock transactions to Stabilizer must fail. [1] See . Finally, petitioner's reliance on , affd. (C.A. 2, 1935), certiorari denied *138 ; , reversed in part and affirmed in part (C.A. 5, 1937); and , is misplaced. In these cases the shareholders-taxpayers, pursuant to oral and/or written agreements, transferred stock to corporations for hypothecation, sale or usage by the corporations. The recipient corporations could hypothecate, sell or use the transferred stocks for their respective corporate needs. If the 11 recipient corporations did not sell the respective stocks, they were required only to ultimately return the stocks to the pertinent shareholders-taxpayers; if, however, the corporations did sell the stocks, the corporations were required ultimately to repurchase the stocks at prevailing market prices for delivery to the shareholders-taxpayers. The salient fact of these cases is that, in the event the stocks were sold, the respective corporations had absolute dominion over the resultant proceeds and were not obligated to transfer these proceeds to the respective shareholders-taxpayers. It was appropriate, therefore, to attribute any tax consequences *139 of these stock sales to the corporations and not to the shareholders-taxpayers. The instant case, however, is factually distinguishable from the above cited cases. Petitioner did not transfer or otherwise assign the subject stock to Stabilizer prior to the stock sales. To the contrary, petitioner himself sold the stock and had absolute dominion over the resulting proceeds. Moreover, petitioner was under no obligation whatsoever to advance these proceeds to Stabilizer. Thus, since petitioner and not Stabilizer realized the income from the sale of the Stabilizer stock, petitioner is properly taxable on this income item. Decision will be entered for the respondent. Footnotes
1. The record reflects that petitioner sold the involved stock to obtain proceeds for the corporation. Nevertheless, this per se does not vitiate the fact that the stock sold was petitioner's own stock and that petitioner had absolute control over the resultant proceeds. ↩